CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 OCT 27 AM 9: 25

DEPUTY CLERK_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOSE MIGUEL MARTE<br>Institutional ID No. 36720-053,<br><br>Plaintiff,<br><br>v.<br><br>THE GEO GROUP INC., *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>CIVIL ACTION NO.<br>1:14-CV-203-BL<br><br><br>Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Jose Miguel Marte ("Marte") filed his *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 on August 13, 2013. (Doc. 1). On January 12, 2015, Marte consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). The case was assigned to this Court on January 14, 2015. (Doc. 11). This Court ordered an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and on June 5, 2015, Marte testified at the hearing. (Doc. 13, 14). At all times relevant, Marte was housed at the GEO Group's Big Spring Correctional Center ("BSCC"), in Big Spring, Texas. (Doc. 1).

### I.  BACKGROUND

Marte claims that on June 17, 2014, while housed at the BSCC Cedar Hill Unit, Defendant Carrasco, a BSCC correctional officer, searched his locker and found nine eyeglass lenses and four pairs of eyeglasses. (Doc. 1, p. 7-8). Officer Franco, the BSCC eyeglass shop supervisor, identified the eyeglasses and lenses as property of the eyeglass shop. (Doc. 1-2, p. 47). Apparently, Marte was not authorized to have the lenses and eyeglasses in his possession, so a disciplinary case was initiated following Defendant Carrasco's discovery. (Doc. 1, p. 8). On the

same day, Defendant Carrasco also reported that Marte had used inmate Cristian Delgado-Flores' phone pin number to make phone calls without permission.[1] (Doc. 1, p. 8).

On July 14, 2014, Marte appeared before Defendant A. Mireles, a BSCC Disciplinary Hearing Officer ("DHO"), regarding the contraband (lenses and eyeglasses) and unauthorized phone charges. (Doc. 1, p. 11). Marte reports that Ms. Porras represented him at this hearing, but that she did nothing and offered no evidence on his behalf. (Doc. 1, p. 11). Marte did present one witness, Remigio Mejia Mercedes, on his own behalf. (Doc. 1, p. 11). Inmate Mercedes testified telephonically and took full responsibility for putting the lenses and eyeglasses in Marte's locker. (Doc. 1-2, p. 47-48). Even so, Defendant Mireles discredited Mercedes' testimony because "any inmate can be pressured or paid off to take the blame or responsibility." (Doc. 1-2, p. 48). Also, Marte tried to call two other inmate witnesses to testify about the punishment, or lack thereof, that they received for having similar eyeglasses or lenses in their possession. (Doc. 1-2, p. 49). However, Defendant Mireles refused to hear the other inmates' testimony because their "charges showed no relevance to [Marte's] charges since it was a different act, at a different time." (Doc. 1-2, p. 49). Consequently, Marte lost 12 months of commissary and phone privileges, 27 days good conduct time, and spent three months in disciplinary segregation (served in the Special Housing Unit or "SHU"). (Doc. 1-2, p. 50).

Marte alleges that he spent 23 hours a day in a windowless cell while in the SHU. (Doc. 2, p. 2). He also claims that he lost his job in the education department and his rights to recreate with the other inmates. (Doc. 2, p. 2). Marte labels these sanctions as, "draconian, deliberate[], cruel, unusual, heinous, abusive, intentionally prejudicial with premeditation, maliciously and

---

[1] In his complaint, Marte mentions another incident where inmate Delgado-Flores was accused of conspiring with Marte to bring contraband into BSCC. (Doc. 1, p. 9). However, the Court cannot find any reference in the prison records to disciplinary or other adverse actions suffered by Marte in reference to that accusation. As such, the Court will not address any claims related to the alleged conspiracy with inmate Delgado-Flores.

2

with knowing sanctions that only a Nazi or Fidel Castro in this time could impose." (Doc. 1, p. 11).

Marte also claims that his due process rights were violated when his attempts to exhaust his administrative remedies were rejected for various procedural defects. (Doc. 1, p. 15-16). First, Marte claims that he received a copy his disciplinary report while in the SHU, but that the listed delivery date was incorrect. (Doc. 1, p. 15-16). Specifically, the report stated that Marte received it on July 29, 2014, when in reality he claims that he received the report on July 21, 2014. (Doc. 1, p. 15-16). Marte avers that he immediately requested a BP-9 (request for administrative remedy form) and a BP-10 (regional administrative remedy appeal form), which he received four days later. Marte claims that he submitted both forms to his counselor, Ms. Rodriguez, on August 1, 2014, to be delivered to Defendant Warden Dwight Sims. (Doc. 1, p. 15). Marte advises that on August 11, 2014, he received a response rejecting both his BP-9 and BP-10 because both were in excess of the page limits. (Doc. 1, p. 15). Marte claims that he resubmitted both forms, via Ms. Rodriguez, on August 14, 2014. (Doc. 1, p. 15). Marte's BP-9 was denied by BSCC on August 24, 2014. (Doc. 1, p. 56-57). On October 24, 2014, Marte was notified that his BP-10 submission was denied as well. (Doc. 1, p. 38). Apparently, Marte had to file a total of three BP-10 forms because he continuously failed to follow the directions regarding the submissions. (Doc. 1, p. 38). Marte's regional appeal (BP-10) was ultimately denied after a review of the disciplinary hearing revealed nothing improper. (Doc. 1, p. 38).

Marte contends that his due process and equal protection rights were violated when another inmate—found with 16 pairs of eyeglasses in an unrelated incident—was charged with a different disciplinary code than Marte and only lost 45 days of commissary and phone privileges. (Doc. 1, p. 13-14). Finally, Marte complains that his due process rights were violated during the

disciplinary hearing because Defendant Mireles reached vague conclusions about his guilt and the credibility of Marte's defense witness. (Doc. 1, p. 14-15).

Marte maintains his innocence of all charges regarding the eyeglasses and lenses. Further, he claims the three months spent in the SHU, along with the loss of other privileges, violated his rights to due process, freedom from cruel punishment, and equal protection under the Fifth, Eighth, and Fourteenth Amendments. (Doc. 1, p. 25). In his complaint, Marte seeks both injunctive and monetary damages, but, at the *Spears* hearing, Marte stated that he did not want money and only wanted his privileges and good conduct time back.

## II. LEGAL STANDARD

In both *in forma pauperis* proceedings and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim upon which relief may be granted. These provisions apply to this *in forma pauperis* prisoner civil rights action. *See Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Taylor v. Gunnels*, No. CV-H-09-3068, 2009 WL 3247175, at *2 (S.D. Tex. Sept. 25, 2009) (citing *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.2002)). The Court is authorized *sua*

*sponte* to test whether the case is frivolous or malicious even before the service of process or before a defendant is required to file an answer. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (discussing the use of questionnaires to develop the factual basis of the plaintiff's complaint); *Spears*, 766 F.2d at 181-82 (discussing the use of an evidentiary hearing).

This Court has reviewed Marte's arguments and assertions in his complaint, supplemented by his testimony at the *Spears* hearing, to determine whether his allegations establish grounds for dismissal or present cognizable claims, which require the Defendants to answer and the case to proceed. Courts liberally construe complaints filed by prisoners proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Estelle v. Gamble*, 429 U.S. 97 (1976).

### III. ANALYSIS

For clarification, the five claims outlined in Marte's complaint can be summarized as follows:

**Count One**: Marte claims that the sanctions resulting from his disciplinary hearing, including his loss of good conduct time, violated his Fourth, Eighth, and Fourteenth Amendment rights.[2] Further, Marte claims that these sanctions could prejudice him by preventing him from partaking in new sentencing reduction initiatives that require an inmate to have "good conduct during their incarceration." (Doc. 1, p. 13).

**Count Two**: Marte claims that his right to equal protection was violated when inmate Gilberto Diaz received drastically reduced sanctions, as compared to Marte's sanctions, after being found in possession of 16 pairs of eyeglasses in his locker. (Doc. 1, p. 13-14).

---

[2] This appears to be Marte's only reference to the Fourth Amendment, while elsewhere in his complaint Marte alleges violations of his Fifth Amendment rights. The Court will regard this as a clerical error by Marte and analyze count one under the Fifth Amendment.

5

**Count Three**: Marte claims that his due process rights were violated when Defendant Mireles, the DHO, discredited his defense witness—who took full responsibility for the contraband—and concluded that inmates could be paid or pressured to lie. (Doc. 1, p. 14).

**Count Four**: Marte claims that his due process rights were violated during the administrative remedy process. (Doc. 1, p. 15). Although unclear, it appears that Marte is complaining about the rejections he received due to procedural defects in his appeals.

**Count Five**: Although no constitutional right is specified, Marte appears to claim that his due process right was infringed due to Defendant Mireles' conflict of interest in being both the DHO and Defendant Carrasco's supervisor. Marte finds fault with Defendant Mireles presiding over the disciplinary hearing since Defendant Carrasco initially discovered the contraband in Marte's locker. (Doc. 1, p. 17-18).

Marte filed a complaint under 42 U.S.C. § 1983 against employees of BSCC. Section 1983, however, only provides a federal cause of action for damages against defendants acting under color of state law. *E.g., Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). BSCC is a private prison facility currently operated by The GEO Group Inc. ("GEO"). As employees of GEO, the named Defendants are not state actors. Because there is no conduct that could reasonably be attributed to a state actor, Marte fails to allege an essential element of a § 1983 claim. Courts liberally construe *pro se* complaints, thus, when a federal prisoner alleges constitutional violations, courts have consistently construed the actions as brought pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389-98 (1971). *Bivens* claims, unlike § 1983 claims, provide for a cause of action for constitutional violations committed by federal officers under color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

But, although Marte was a federal prisoner, he was incarcerated at a private prison. Unlike § 1983 claims, there is not a "state action" equivalent for claims brought pursuant to *Bivens*. In fact, the United States Supreme Court has repeatedly refused to extend liability under *Bivens* except in limited situations. Specifically, the Supreme Court refused to extend *Bivens*

6

liability to allow federal prisoners to sue employees of a private prison. *Minneci v. Pollard*, 132 S.Ct. 617, 624-26, 181 L.Ed.2d 606 (2012). In *Minneci*, a federal prisoner confined at a private prison tried to assert a *Bivens* Eighth Amendment claim of deliberate indifference to his serious medical needs against individual employees of the prison. *Id.* at 620. In rejecting this argument, the Court held that *Bivens* liability would not be extended to employees of private facilities where an adequate remedy exits under state law. *Id.* at 624-26.

### A. Count One: Loss of good conduct time and other privileges

As stated, Marte claims that the sanctions resulting from his disciplinary hearing, including the lost good conduct credit, infringed upon his Fifth, Eighth, and Fourteenth Amendment rights. Of note, Marte unequivocally denied seeking monetary damages for these disciplinary sanctions at his *Spears* hearing. In fact, Marte relayed that he only included the monetary damages in his initial complaint because he thought it was mandatory for his complaint to be accepted. Instead, Marte seeks only the reinstatement of his privileges and good conduct time.

However, the United States Supreme Court held in *Heck v. Humphrey*:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994). In *Edwards v. Balisok*, 520 U.S. 641 (1997), "the Supreme Court approved the application of the *Heck* doctrine to the prison disciplinary setting and held that a . . . prisoner's claim for damages in a challenge to the validity of the procedures used to deprive

him of [good conduct time] is not cognizable under section 1983." *Briseno v. Thaler*, No. 2:12-CV-0211, 2012 WL 5355759, at *2 (N.D. Tex. Oct. 9, 2012), *report and recommendation adopted*, No. 2:12-CV-0211, 2012 WL 5359609 (N.D. Tex. Oct. 31, 2012); *White v. Fox*, 294 F. App'x 955, 960 (5th Cir. 2008) (unpublished) ("A 'conviction,' for purposes of *Heck*, includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits."). "Although the *Heck* opinion involved a bar to claims for monetary damages, a dismissal of . . . claims for injunctive relief and for declaratory relief may also be made pursuant to *Heck*." *Craven v. Gonzalez*, No. 4:12-CV-535-Y, 2013 WL 246777, at *2 (N.D. Tex. Jan. 23, 2013) (citing *Edwards*, 520 U.S. at 648).

Marte offers no evidence that his disciplinary conviction has been reversed on "direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Heck*, 512 U.S. at 486-87. As such, Marte's "disciplinary conviction is still extant, and because success on the instant suit would imply that this conviction was invalid," Marte's claim in count one is barred by *Edwards* and *Heck*. *See Phillips v. Castillo*, 354 F. App'x 948, 949 (5th Cir. 2009) (unpublished); *Edwards*, 520 U.S. at 646-48; *Heck*, 512 U.S. at 486-87.

Accordingly, the Court recommends that upon transfer back to the District Judge, Marte's count one claim be construed as a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Spina v. Aaron*, 821 F.2d 1126, 1127 (5th Cir. 1987) (district court treated *Bivens* action as § 2241 motion and then dismissed for want of jurisdiction); *Tucker v. Carlson*, 925 F.2d 330 (9th Cir. 1991) ("[T]o the extent [a federal prisoner] challenges the fact or duration of his confinement, the district court should have construed [his pro se] complaint as petition for habeas corpus under

28 U.S.C. § 2241. To the extent [a prisoner's] complaint seeks damages for civil rights violations, his complaint [should be] construed as *Bivens* action.")

### B. Counts Two: Marte fails to establish an Equal Protection claim

Marte complains in count two that his discipline for possession of the eyeglasses and lenses was disproportionate to another inmate's discipline for a similar, unrelated offense. Specifically, Marte states that his equal protection rights, presumably under the Due Process Clause of the Fifth Amendment,[3] were violated when inmate Gilberto Diaz, who according to Marte was caught in possession of 16 pairs of eyeglasses, only received 45 days of lost phone privileges. (Doc. 1, p. 13-14).

However, "[t]he federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. Unit A Oct. 1981). In fact, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile [prison] environment." *Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 2299, 132 L. Ed. 2d 418 (1995); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (applying *Sandin* to the federal prison system). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

In his DHO report, Defendant Mireles cited Bureau of Prisons regulation P.S. 5270.09 as authority "allow[ing] disciplinary hearing officers to base their findings on at least some evidence and on a case by case basis." (Doc. 1, p. 49). The federal Inmate Discipline Program allows a DHO to dispose of a disciplinary case by one of three results: (1) finding that an inmate

---

[3] *United States v. Windsor*, 133 S. Ct. 2675, 2695, 186 L. Ed. 2d 808 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."

committed the charged or similar offense, (2) finding that an inmate did not commit the charged offense, or (3) referring the incident for further investigation. *See* 28 C.F.R. § 541.8(a) (2011). "If [an inmate] committed the prohibited act(s), the DHO can impose any of the available sanctions listed in Tables 1 and 2." 28 C.F.R. § 541.8(g). Marte was charged with violation code 226, possession of stolen property, for his part in this incident. (Doc. 1, p. 49). The Inmate Discipline Program classifies a code 226 violation as a "High Severity Level Prohibited Act." 28 C.F.R. § 541.3. Sanctions for a high severity level offense include: loss of up to 27 days good conduct credit available for a year, up to six months of disciplinary segregation, loss of visitation privileges, loss of telephone privileges, loss of commissary privileges, and loss of job. *Id.* To recap, Marte was sanctioned with 27 days of lost good conduct time, three months disciplinary segregation, and 12 months lost telephone, visitation, and commissary privileges. (Doc. 1, p. 50). And, as a consequence of his time spent in disciplinary segregation, Marte lost his job in the education department. (Doc. 1, p. 13). Marte's sanctions all fall within the available punishment range prescribed by the Inmate Discipline Program. *See* 28 C.F.R. § 541.3.

"Equal protection means that similarly situated persons are to receive substantially similar treatment from their government. To establish an equal protection violation, a plaintiff must introduce sufficient evidence . . . that, compared with others similarly situated, the plaintiff was treated differently because of an improper consideration, such as his religion." *Kuperman v. Wrenn*, 645 F.3d 69, 78 (1st Cir. 2011) (citations omitted). Even so, "[t]here is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (U.S. 1977).

Marte does not allege that he was disciplined differently than Diaz because of any improper consideration by Defendant Mireles, rather, Marte only complains about the disparate sanctions that each received for similar offenses. Also, other than incarceration, Marte does not point to any facts to suggest Diaz and he are "similarly situated" within the prison setting. There exists a myriad of reasons that could result in different disciplinary findings for different inmates. One obvious possibility is that BSCC officials found Marte responsible for having the eyeglasses and lenses in his locker for over two weeks. (Doc. 1, p. 49). Unable to establish the necessary elements for an equal protection claim, Marte's count two claim should be dismissed for failure to state a claim.

### C. Count Three: Marte's constitutional rights were not violated when Defendant Mireles discredited witness testimony at the disciplinary hearing.

As stated, Marte claims that his due process rights were violated when Defendant Mireles, the DHO, discredited his defense witness—who took full responsibility for the contraband—and concluded that inmates could be paid or pressured to lie. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *McKoy v. Fox*, 587 F. App'x 802, 803 (5th Cir. 2014) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). But, a "prisoner is entitled to: (1) written notice of the charges at least 24 hours prior to a disciplinary hearing; (2) an opportunity 'to call witnesses and present evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals'; and (3) 'a written statement by the factfinders as to the evidence relied on and the reason for the disciplinary action.'" *Morgan v. Quarterman*, 570 F.3d 663, 668 (5th Cir. 2009) (quoting *Wolff*, 418 U.S. at 564-65). Finally,

"there must be 'some evidence' in the record which supports the disciplinary decision. *McKoy*, 587 F. App'x at 803-04.

The Court is satisfied that Marte received the necessary due process regarding the disciplinary hearing. First, Marte received more than 24 hours notice of the hearing, as his request for an almost three-week continuance was granted. (Doc. 1-2, p. 46). Next, Marte called Remigio Mercedes as a witness at the disciplinary hearing, who took full responsibility for putting the eyeglasses and lenses in Marte's locker. (Doc. 1-2, p. 47-48). Finally, Marte was provided a copy of the DHO report detailing Defendant Mireles' reasoning and findings. (Doc. 1, p. 15).

There also appears to be "some evidence" that Marte was in possession of the contraband. *See McKoy*, 587 F. App'x at 803-04. Marte complains that Defendant Mireles unreasonably discounted Mercedes testimony, but that complaint has no relation to the actual disciplinary violation. Marte was charged with disciplinary code 226, possession of stolen property. (Doc. 1, p. 49). It is true that Mercedes testified that he placed the eyeglasses and lenses in Marte's locker, but Marte "possessed" them for almost two weeks. (Doc. 1-2, p. 47-48). Marte claimed that he did not know the contraband was in his locker, but apparently Defendant Mireles did not find that testimony convincing. Furthermore, Marte was not charged with actually stealing the eyeglasses and lenses, but simply possessing them. The Court finds it reasonable that Defendant Mireles might discount Mercedes' testimony since identifying the person that actually stole the eyeglasses and lenses was not a factor in the possession offense. Accordingly, the Court finds that Marte's count three claim should be dismissed for failure to state a claim.

### D. Count Four: Marte's due process rights were not violated through rejection of his administrative appeals due to procedural defects.

Marte complains that several of his administrative appeals were returned due to procedural defects. The Prison Litigation Reform Act requires all parties seeking relief to properly exhaust their administrative remedies, meaning "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation omitted); 42 U.S.C. § 1997(e). "Proper exhaustion demands compliance with an agency's deadlines and other critical *procedural* rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (emphasis added).

In summary, Marte claims that he submitted both administrative (BP-9) and regional (BP-10) appeal forms to his counselor, Ms. Rodriguez, on August 1, 2014, to be delivered to Defendant Warden Dwight Sims. (Doc. 1, p. 15). Marte reports that both were denied because they exceeded the allowed page limits. (Doc. 1, p. 15). Marte claims that he resubmitted both forms, via Ms. Rodriguez, on August 14, 2014. (Doc. 1, p. 15). Marte's BP-9 was denied by BSCC on August 24, 2014. (Doc. 1, p. 56-57). On October 24, 2014, Marte was notified that his BP-10 submission was denied as well. (Doc. 1, p. 38). Marte had to file a total of three BP-10 forms because he continuously failed to follow directions regarding the submissions. (Doc. 1, p. 38). Marte's regional appeal (BP-10) was ultimately denied after a review of the disciplinary hearing revealed nothing improper. (Doc. 1, p. 38).

The administrative denial (BP-9) dated August 24, 2014, explains that Defendant Mireles followed protocol in investigating and conducting the disciplinary hearing. (Doc. 1-2, p. 27).

Further, this denial informed Marte that the good conduct sanctions had been submitted to and approved by the Federal Bureau of Prisons on July, 17, 2014. (Doc. 1-2, p. 27).

The regional denial (BP-10) dated October 24, 2014, clearly explains why all three of Marte's regional appeals had been rejected. First, Marte's August 1st appeal was denied with instructions to press harder on the carbon-copy form to make it legible. (Doc. 1-2, p. 6). Second, Marte's September 23rd appeal was denied because his submission exceeded the form plus one continuation page allowed for regional appeals. (Doc. 1-2, p. 6). Next, Marte's October 23rd appeal was denied because he still failed to follow the directions given to him in response to his September 23rd regional appeal. (Doc. 1-2, p. 6). The October 24th denial also explained that Marte had failed to properly mail his regional appeals via first class mail. (Doc. 1-2, p. 6). Instead, Marte submitted his appeals to his case manager. (Doc. 1-2, p. 6). The denial concluded, "it is evident you did not follow the correct procedures for having your issue resolved." (Doc. 1-2, p. 6).

The Court finds that Marte's failure to properly comply with procedural rules, not a violation of due process, led to the denial of his administrative appeals. *See Woodford v. Ngo*, 548 U.S. at 90. As such, Marte's count four claim should be dismissed as frivolous.

### E. Count Five: Marte's complaint that Defendant Mireles was bias as the DHO is frivolous.

In count five of his complaint, Marte alleges that Defendant Mireles was not impartial at the disciplinary hearing since his direct subordinate, Defendant Carrasco, originally located the eyeglasses and lenses in Marte's locker. (Doc. 1, p. 17-18). Marte claims that Defendant Mireles supervises BSCC's investigative officers, including Defendant Carrasco. (Doc. 1, p. 18).

"[T]o prevail on his claim that his hearing officer was biased, [plaintiff] needed to show that the actions taken 'present[ed] such a hazard of arbitrary decisionmaking that it should be held violative of due process of law.'" *Morgan v. Quarterman*, 570 F.3d at 668 (quoting *Wolff*, 418 U.S. at 570). Marte has not made such a showing. Marte fails to demonstrate how he was prejudiced by Defendant Mireles supervising Defendant Carrasco. Instead, he relies solely on conclusory allegations like "[Mireles] is the boss of officer Carrasco . . . which means that there is a conflict of interest because [they] work in the same . . . department and are judge and part in this process." (Doc. 1, p. 18). Marte's complaint does nothing more than describe the BSCC investigations rank structure. In fact, Defendant Mireles' DHO report addresses Marte's impartiality concern, stating, "DHO's are an impartial hearing body, which holds hearings on a case by case basis. We rely on some evidence or the greater weight of the evidence to conclude whether an inmate committed a prohibited act." (Doc 1-2, p. 49).

Marte fails to evince an arbitrary decision-making scheme used by Defendant Mireles in violation of Marte's due process rights. *Morgan v. Quarterman*, 570 F.3d at 668. Accordingly, Marte's claim in count five should be dismissed as frivolous.

## IV.     CONCLUSION

For the foregoing reasons, it is therefore **RECOMMENDED** that upon transfer back to the District Judge:

1. Count One be construed as a writ of habeas corpus under 28 U.S.C. § 2241. *See Spina v. Aaron*, 821 F.2d 1126, 1127 (5th Cir. 1987).

2. Count Two be **DISMISSED** for failure to state a claim.

3. Count Three be **DISMISSED** for failure to state a claim.

4. Count Four be **DISMISSED** as frivolous.

5. Count Five be **DISMISSED** as frivolous.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated October 27, 2015.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE